# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| MARSHA K. BOYANOWSKI, | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:17-CV-355-TLS |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff Marsha K. Boyanowski seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security Disability benefits and that the ALJ erred: (1) by failing to incorporate the limiting effects related to urinary system problems, gastrointestinal problems, other severe and non-severe impairments, and the combination therefore, into the Residual Functional Capacity (RFC); and (2) by failing to award at least a period of disability and failing to provide a meaningful explanation that there had been no 12-month period in which the Plaintiff was unable to sustain fulltime work.

## BACKGROUND

This case has a lengthy procedural history, involving multiple hearings and three District Court cases in the Northern District of Indiana. (R. 1031–1034.) On March 24, 2009, the Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB) asserting that she was disabled. On July 19, 2010, an ALJ held a hearing, during which the Plaintiff amended her

alleged onset date of disability to May 31, 2008. On November 19, 2010, the ALJ entered an unfavorable decision. The Plaintiff appealed on December 7, 2010 and the Appeals Counsel rendered an adverse decision on March 2, 2012. The Plaintiff filed a Complaint for District Court review, *Boyanowski v. Astrue*, 1:12-cv-139 (N.D. Ind. 2013). The District Court reversed and remanded the case on July 2, 2013. The Appeals Council directed that further proceedings be held consistent with the District Court order.

On May 27, 2014, the ALJ entered an unfavorable decision. The Appeals Council did not review the ALJ's decision within the allotted sixty days. The Plaintiff then filed a second Complaint for District Court review in *Boyanowski v. Colvin*, 1:14-cv-295 (N.D. Ind. 2014). The Plaintiff also filed another Complaint for District Court review related to the subsequent application that she filed. *Boyanowski v. Colvin*, 1:14-cv-404 (N.D. Ind. 2013). The District Court affirmed the decision of the Commissioner and the Plaintiff filed an appeal to the Seventh Court of Appeals. *Boyanowski v. Colvin*, 15-3691 (7th Cir. 2016).

The parties reached a global settlement that encompassed cases 15-3691, 1:14-cv-295, and 1:14-cv-404. On September 28, 2016, the Appeals Council vacated the extant ALJ decisions of August 29, 2013 and May 27, 2014, directed the consolidation of the prior extant applications of March 19, 2009 and March 12, 2012, and instructed that the record be completed and that a new hearing be held.

On January 26, 2017, the ALJ conducted a hearing and entered an unfavorable decision on April 20, 2017. On May 11, 2017, the ALJ revised that decision to include exhibits omitted in the April 20, 2017 decision. The May 11, 2017 decision became the final decision because the Appeals Council chose not to review the ALJ's decision within the allotted sixty days. The Plaintiff now challenges the ALJ's decision.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* The ALJ determined that the claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of May 31, 2008 through her date last insured of March 31, 2012. (R. 1036.)

The ALJ also discussed the four rules pursuant to 20 CFR § 404.130 to determine when the Plaintiff was insured for purposes of establishing a period of disability or becoming entitled to disability insurance benefits. (*Id.*) These four rules require that the Plaintiff must also be "fully insured" pursuant to 20 C.F.R. § 404.132. (*Id.*) The ALJ determined that the Plaintiff last me the insured status requirements of the Social Security Act on March 31, 2012 (*Id.*)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). The ALJ found that the Plaintiff had the following severe impairments: fibromyalgia, obstructive sleep apnea, obesity, and diabetes mellitus. (*Id*. at 1036.) The ALJ stated that these impairments "had more than a minimal effect on the claimant's ability to work. They limited her physical capacities for lifting, carrying,

3

pushing and pulling heavy items; reaching on a constant basis with her upper extremities; performing fine and gross manipulative tasks on more than a frequent basis; standing and walking for more than two hours during an eight-hour workday; and engaging in postural changes." (*Id.*) These impairments also "limited her ability to work around certain hazards in the workplace environment." (*Id.*)

The ALJ acknowledged that the Plaintiff had three additional diagnoses that did not qualify as severe mental impairments prior to the date she last met the disability insured status requirements of the Social Security Act: (1) attention-deficit hyperactivity disorder; (2) a medically determinable mental impairment of depression; and (3) generalized anxiety disorder (*Id.* at 1037.) The Plaintiff received a diagnosis of attention-deficit hyperactivity disorder in March 2010, which a primary care physician diagnosed. (*Id.* at 1037.) The ALJ noted that the evidence indicated that the Plaintiff's attention-deficit hyperactivity disorder came under control with medication therapy, there was no evidence that this condition produced symptoms that interfered more than minimally with the Plaintiff's ability to perform work related activity, and there was no persuasive evidence that it lasted as severe for more than twelve continuous months. (*Id.* at 1037.)

Regarding the Plaintiff's depression, the ALJ found that the Plaintiff did not have a severe mental impairment prior to the date she last met the disability insured status requirements of the Social Security Act. (*Id.* at 1037-38.) The ALJ stated that the Plaintiff had no limitations in her abilities to engage in daily activities and maintain social functioning, mild limitations in her abilities to concentrate, persist, keep pace (CPP), and had not experienced an episode of decompensation. (*Id.*) Regarding the Plaintiff's generalized anxiety disorder, the ALJ acknowledged that the Plaintiff's primary care physician noted that she had a diagnosis of

4

generalized anxiety disorder. (*Id.* at 1037.) The ALJ noted, however, that there are no complaints from the Plaintiff regarding her alleged general anxiety disorder in the record. (*Id.* at 1038.) The ALJ also stated that there were no complaints nor mental status exam findings regarding the Plaintiff's alleged anxiety or depression when the physician saw the Plaintiff in September 2011. (*Id.*) The ALJ said that the Plaintiff complained of worsening depression at her December 2011 appointment, but had no complaints regarding anxiety or depression in January 2012 or July 2012. (*Id.*) The ALJ stated that the "the above discussion of the evidence not previously considered by the undersigned does not change his assessment that the claimant did not have severe mental impairments prior to the date she last met the disability insured status requirements of the Act." (*Id.*)

The ALJ explained that "whatever limitations and the claimant had regarding her capacity to work were primarily due to her physical condition and not mental impairments." The ALJ noted that she received "little treatment" for her mental conditions other than prescription medications, which were not prescribed by a mental healthcare provider and she did not participate in counseling or therapy. (*Id.*) As these impairments caused no more than "mild" limitation in any of the functional areas, the ALJ considered them non-severe. 20 CFR 404.1520a(d)(1).

The ALJ also stated that the Plaintiff's alleged recurrent urinary tract infections, genitourinary conditions, flank pain, bladder symptoms, colo-vesical fistula, and use of cane were incorporated into the RFC to the extent that these symptoms were reasonably accepted as consistent with the objective medical evidence and other evidence. (R. 1041–46.) The ALJ states that the evidence fails to show that the Plaintiff had recurrent urinary tract infections or treatment for genitourinary condition after the Plaintiff's surgeries in January 2010. (*Id.* at 1042.) The ALJ

5

noted that the Plaintiff underwent a cystoscopy, she said she was doing well at her three-month follow-up but was concerned about a urinary tract infection, and there are no records regarding those results. (*Id*. at 1041.) The Plaintiff did not mention a urinary tract infection at her additional follow-up appointment, during which the physician noted "the claimant was doing very well." (*Id*. at 1042.)

The ALJ states that while the Plaintiff sought hospital care for an acute onset of flank pain and bladder symptoms, the record showed that there was no evidence of calcified stone, distal ureteral stones, or kidney stones during her treatment. (*Id*.) The Plaintiff also underwent further testing, a cystoscopy, that showed no evidence of papillary lesions in the urinary bladder or evidence of fistula. (*Id*. at 1043.) The ALJ stated that it found a notation by the primary care physician that stated: "chronic urinary tract infection resolved with surgery in 2010" was noteworthy." (*Id*) (citing Ex. B-16-F and B-20-F.)

The ALJ also discussed the Plaintiff's colo-vesical fistula, which required treatment with a small bowel resection after surgery in January 2010, and peri-umbilical pain (*Id*. at 1043–44.) When the Plaintiff returned for a follow-up with her physician regarding her colo-vesical fistula related problem in February 2010, her physician noted that she was doing well. (*Id*.) The Plaintiff returned in September 2010 and a CT scan showed colon colitis and subsequently a biopsy that suggested possible ischemic colitis. (*Id*. at 1044.) The ALJ stated that the treatment a colorectal surgeon suggested was "conservative." (*Id*.) The Plaintiff complained of peri-umbilical pain at her January 2011 appointment and had a palpable umbilical hernia. The subsequent CT scan of the Plaintiff's abdomen and pelvis was negative for acute findings. (*Id*.) In February 2011, the Plaintiff visited the emergency room due to abdominal pain, vomiting and constipation. A CT scan noted that there was no evidence of ischemic colitis, but that there was thickening of several

loops of the small bowel consistent with enteritis. (*Id*.) The Plaintiff's physician noted that in April 2011, the Plaintiff had a normal colonoscopy and a normal endoscopy to the mid-transverse colon. (*Id*. at 1044.)

Finally, the ALJ noted that the Plaintiff's physician prescribed her a cane in July 2012 and that the evidence does not reflect a need for the cane. (*Id.* at 1045–46.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv) or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v). The ALJ determined that, through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526), as well as SSR 17-2p. (R. 1038.) The ALJ stated that the Plaintiff was not under a disability, as defined in the Social Security Act, or at any time from May 31, 2008, the amended alleged onset date, through June 30, 2012, the date last insured. (*Id*. at 1051.)

The ALJ noted that he had considered listings 3.09 (Corpulmonale secondary to chronic pulmonary vascular hypertension), 3.10 (Sleep-related breathing disorders) and Social Security

7

Ruling 02-1p (Obesity). (*Id*. at 1039.) To meet a listing, the evidence must document the existence of all of the listing's specified medical criteria. In regard to 3.09, the ALJ found testing has not shown the claimant to have a mean pulmonary artery pressure of greater than 40 mm Hg, or arterial hypoxemia. (*Id*.) In regard to 3.10, the ALJ found that the evidence shows testing noted that the Plaintiff had a positive response to use of a CPAP machine and she wears this machine at night. (*Id*. at 1039.) The ALJ stated that the state agency medical consultants who reviewed the evidence of record also concluded that the Plaintiff's obesity and other physical impairments did not meet or equal the severity of any impairment described in Appendix 1 of the regulations. (*Id*.)

The ALJ determined that the Plaintiff had the RFC to perform most work activities associated with sedentary work as defined in 20 CFR 404.1567(a). (*Id*.) The ALJ found that the Plaintiff "could lift, carry, push and pull ten pounds frequently and fifteen pounds occasionally, stand and/or walk for two hours during an eight-hour workday, and sit for six hours throughout the eight-hour workday. As to the use of her upper extremities, the claimant could frequently reach and perform fine and gross manipulative tasks on a frequent basis. Regarding postural changes, she could occasionally kneel, crouch, crawl, balance, squat, climb ramps and stairs, and bend and stoop in addition to what was required to sit, but could not climb ladders, ropes, or scaffolds. With respect to her work environment, the claimant could not work in concentrated exposure to or within close proximity to unprotected heights and inherently dangerous machinery." (*Id*. at 1039–1040.) The ALJ stated that, in making the RFC finding, it had considered "all of the claimant's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p. (*Id*. at 1040.)

The ALJ also discussed the Plaintiff's alleged numbness, tingling in the hands/arms, and constant hand shaking and tremors. (*Id*. at 1044.) The ALJ stated that the RFC provides for any paresthesia the Plaintiff may experience by limiting her to work that does not require her to perform more than occasional fine and gross manipulative tasks. (*Id*. at 1045.) The ALJ acknowledged that the Plaintiff had decreased strength and limited range of motion in her arms, and painful range of motion of her shoulders. The ALJ stated that he accounted for these issues by eliminating constant reaching in formulating the RFC. (*Id*.)

The ALJ acknowledged that the Plaintiff took several medications, including pain medication. Although the ALJ stated that there was no persuasive evidence that the Plaintiff experienced any side effects from her medication, the ALJ still limited the Plaintiff's work environment to one that did not require her to climb ladders, ropes, and scaffolds, or to work where there was concentrated exposure or to work within close proximity to unprotected heights and inherently dangerous machinery. (*Id*.)

The ALJ said that he did not account for the Plaintiff's alleged symptoms and functional limitations that were not medically determinable. (*Id*.) The ALJ noted that the Plaintiff challenged the finding of the Plaintiff's genitourinary impairment as non-severe and that the ALJ should have considered the Plaintiff's kidney flank pain, gout, and combined impact thereof. (*Id*. at 1041.) The ALJ noted that the Plaintiff had failed to provide a "medical source statement or any medical support for his allegations, medical opinion and theories, and arguments. Therefore, [Plaintiff's attorney's] allegations and theories are entitled to little weight." (*Id*.) The ALJ stated that the "evidence fails to show the claimant had a gastrointestinal, colon, or rectal condition, abdominal pain, or irritable bowel syndrome that would require greater function. The ALJ stated that: "[t]here is no persuasive evidence upon which to find that the Plaintiff suffered from

9

debilitating pain or other symptoms that would further reduce the residual functional capacity. (*Id*. at 1046–47.)

**STANDARD OF REVIEW**

The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). The question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it

lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [his] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff alleges that the ALJ erred when it: (1) did not incorporate the limiting effects related to urinary system problems, gastrointestinal problems, other severe and non-severe impairments, and the combination therefore into the RFC; and (2) failed to award at least a period of disability and failing to provide a meaningful explanation that there had been no 12-month period in which the Plaintiff was unable to sustain fulltime work. The Defendant argues that substantial evidence supports the ALJ's decision and it should be affirmed. (Def.'s Resp. Br. at 3.)

**1. Incorporation of Impairments into the RFC**

The parties disagree whether the ALJ appropriately incorporated all limitations, including those severe and non-severe, into the RFC. The Plaintiff argues that the ALJ erred when he

minimized the urinary system impairment because he viewed abdominal pain, urinary tract infections, and kidney stones in isolation as if they were separate impairments. (Pl.'s Br. at 24.) The Plaintiff argues that these are, in fact, the same impairment. (*Id*.) The Plaintiff also argues that the ALJ's failure to include migraine and fatigue issues into the RFC merit remand. (*Id*.) The Defendant argues that the Plaintiff's contentions are without evidentiary support and must fail, as the ALJ adequately considered the evidence and discussed his rationale for assessing the Plaintiff's RFC as he did. (Def.'s Resp. Br. at 4, 6.) The Defendant states that the ALJ discussed records concerning the Plaintiff's urinary and gastrointestinal impairments at length. (*Id*. at 4.) The Defendant states that the ALJ noted that the evidence failed to show that the Plaintiff had recurrent urinary tract infections and there is an absence of any specific treatment for any genitourinary condition after the Plaintiff's January 2010 surgeries. (*Id*. at 5.)

The ALJ must consider all the Plaintiff's medically determinable impairments, both severe and non-severe, in the aggregate in determining the Plaintiff's RFC. When an ALJ determines that one or more of a claimant's impairments are "severe," "the ALJ need[s] to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). "The fact that [an impairment] standing alone is not disabling is not grounds for the ALJ to ignore [it] entirely—it is [its] impact in combination with [the claimant's] other impairments that may be critical to his claim." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). That is, "a competent evaluation of [a claimant's] application depends on the total effect of all his medical problems." *Golembiewski*, 322 F.3d at 918; *see also Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) ("As we—and other circuits—have emphasized repeatedly . . . the *combined* effects of the applicant's impairments must be considered, including

12

impairments that considered one by one are not disabling.")."A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (finding that "failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error"); *Terry*, 580 F.3d at 477 (noting that even where impairments would "not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether"); *Verlee v. Astrue*, No. 1:12-CV-45, 2013 WL 1760810, at *5 (N.D. Ind. Apr. 24, 2013) (remanding where "ALJ failed to discuss, and effectively ignored, the Plaintiff's" non-severe impairments when determining the Plaintiff's RFC).

In this case, the ALJ discussed the Plaintiff's non-severe and severe impairments at length. There is sufficient indication that the ALJ considered the Plaintiff's impairments in the aggregate. At step two, the ALJ examined the objective medical evidence regarding the Plaintiff's numerous determinable impairments and decided that all were non-severe excepting fibromyalgia, obstructive sleep apnea, obesity, and diabetes mellitus. (R. 1036.) The ALJ also acknowledged that the Plaintiff had several, non-severe medical impairments and addressed them accordingly. The ALJ also disregarded some of the Plaintiff's alleged medical issues as they were not medically determinable.

In step four, the ALJ discussed in detail whether the limitations stemmed from the four severe impairments identified at step two. The ALJ considered all of the Plaintiff's symptoms and the extent to which these were consistent with the objective medical evidence and other evidence. (*Id.* at 1040–45.) The ALJ incorporated the Plaintiff's severe impairments and non-severe impairments into the RFC, accounting for the Plaintiff's alleged weakness, limitations in strength and range of motion in her arms, and side effects of medications. The ALJ appropriately

13

did not consider the Plaintiff's alleged limitations and restrictions that were not attributable to medically determinable impairments. *Dorrance v. Colvin*, No. 3:12-cv-540-CAN, 2013 WL 6839909, at *6 (N.D. Ind. Dec. 27, 2013) (citing SSR 96-8p). "Although the non-severe impairments may not have an effect on the claimant's RFC ultimately, the ALJ [is] required to explain why." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). The ALJ acknowledged which impairments did not impact the Plaintiff's RFC analysis as some of the Plaintiff's arguments regarding symptoms, functional limitations, and medical connections were not medical evidence, or occurred after the Plaintiff's last date insured. (R. 1041, 47.) The ALJ has met his burden in this instance as "[t]he Court is easily able to track the ALJ's reasoning concerning his assignment of [the Plaintiff's] RFC, and thus he has done enough." *Lambright v. Colvin*, No. 1:12-CV-138, 2013 WL 1403221, at *10 (N.D. Ind. Apr. 5, 2013).

Finally, the Plaintiff argues that the ALJ's "frequent incorporation of vacated findings from prior vacated decisions in the decision and revised decision is confusing and prevents them from being meaningfully reviewed." (Pl.'s Br. at 25) (citing *Herron v. Shalala*, 19 F.3d 229, 333–34) (7th Cir. 1994). The Plaintiff does not further develop this argument and the Defendant contends that the Plaintiff has no basis for remand. (Def.'s Br. at 7–8.) The Court agrees that the Plaintiff's argument is sparse and that she cites to no specific instances in which the incorporation of vacated findings was confusing and prevented meaningful review. Further, the case the Plaintiff relies upon is distinguishable from the Plaintiff's case. In *Herron*, the court determined that the ALJ had incorporated by reference the summary of the evidence but *failed* to make any assessment of the medical evidence. *Id.* at 334. Here, the ALJ engaged in substantial analysis, even when he incorporated references to previous, vacated decisions. Thus, the Court finds that there is no basis for remand.

14

### 2. Period of Disability

An award of temporary benefits can be granted if a claimant meets the Act's definition of "disability" for a time lasting 12 months or longer, even if she later recovers sufficient health to return to full-time work on a long-term basis. This 12-month period must be continuous. *Reed v. Colvin*, No. 1:14-cv-080 JD, 2015 WL 4921614, at *9 (N.D. Ind. Aug. 18, 2015), *aff'd*, 656 F. App'x 781 (7th Cir. 2016). The Plaintiff argues that her severe and lengthy medical history means that the ALJ had no plausible basis to conclude that there had been no period lasting 12 months or more in which she did not meet the definition of disability under the regulations. (Pl.'s Br. at 27.) The Plaintiff argues, specifically, that the Defendant should have found that the Plaintiff was disabled for a closed period of disability from the alleged onset date through May 6, 2011. (*Id.* at 28.) The Defendant argues that the Plaintiff has failed to prove that her impairments were severe enough to meet the definition of disability and that the ALJ discussed ample evidence from the purported period that demonstrated there was no continuous disability for 12 months during that time. (Def.'s Resp. Br. at 9.)

The Plaintiff bears the burden of showing that she has been unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The inability to engage in any substantial gainful activity, and not merely the impairment itself, must last for at least twelve months. *Livergood v. Colvin*, No. 1:14-CV-360-JVB-SLC, 2015 WL 7573217, at *3 (N.D. Ind. Nov. 25, 2015) (citing *Barnhart v. Walton,* 535 U.S. 212, 216–22 (2002); *Lambright v. Colvin*, No. 1:12-CV-138, 2013 WL 1403221, at *10 (N.D. Ind. Apr. 5, 2013)). The Plaintiff

cites several cases from outside this circuit to bolster her argument that that the ALJ erred in when it did not consider the effects of a series of hospitalizations on the period of disability and the various medical procedures the Plaintiff underwent. (Pl.'s Br. at 27.) These cases are not controlling in this jurisdiction. Further, they are not relevant to the facts at hand.

For example, the Plaintiff cites to *Lovette v. Astrue*, No. 07-2029, 2008 WL 65207, at *3 (W.D. Ark. Jan. 4, 2008), a case in which the ALJ erred by not considering a closed period of disability. (*Id.*) In *Lovette*, the ALJ erred by ignoring the claimant's various surgical procedures over a seventeen-month period and the absences from work they could cause. 2008 WL 62507, at *3–5. *Lovette* is not applicable here because the Plaintiff has not shown that the ALJ ignored evidence during the relevant period. The Plaintiff also cites to *Lang v. Secretary of Health and Human Services*, No. 88-1561, 1989 WL 40188 (6th Cir. Apr. 12, 1989), in which the court found that the ALJ erred because he did not consider a closed period of disability. In *Lang*, the claimant was shot and stated that two years later he could return to work. 1989 WL 40188, at *2. There, the court found that the ALJ erred by only focusing on the period after the claimant admitted he was physically able to return to work and did not consider a closed period of disability from the time of the gunshot wound to the time of his admitted improvement. *Id.* In this case, the ALJ thoroughly considered and evaluated the Plaintiff's extensive medical history in concluding that the Plaintiff did not meet the definition of disability for a period lasting 12 months or longer. The ALJ supported his decision with substantial evidence, including the evaluation of the medical record. (R. 1036–49.) The Court finds that substantial evidence supports the ALJ's decision to deny a closed period of disability. Finally, this case is also distinguished from *Ash-Davis v. Commissioner of Social Security*, No. C-1-06-648, 2008 WL 1886022, at *3 (S.D. Ohio Apr. 28, 2008). The Ohio district court found "strong evidence

suggesting at least a closed period of disability." However, the Plaintiff has not shown that her impairments were on the same level as those mentioned in *Ash-Davis*. Accordingly, this case, like *Lovette* and *Lang*, is wholly inapplicable to the present facts.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is AFFIRMED.

SO ORDERED on February 26, 2019.

                                           s/ Theresa L. Springmann
                                          CHIEF JUDGE THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT